UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY KHALIL ABYAD (A# 034-688-542),<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | No. 1:26-cv-05303 DJC SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The assigned District Judge referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(17). ECF No. 5.

## FACTUAL AND PROCEDURAL HISTORY

### I. Factual Background

Petitioner is a dual citizen of Israel and Jordan who has resided in the United States since 1975, when was about two years old. ECF No. 2 at 2, ¶ 1; id. at 3, ¶ 11. On or about February 23, 2007, Petitioner was convicted of a violation of Cal. Health & Safety Code § 11351, possession/purchase for sale of a controlled substance. Id. at 2, ¶ 3. On March 20, 2008, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") administratively charging him as deportable for having committed an aggravated felony and controlled substance violation under 8 USC §§ 1227(a)(2)(A)(iii) and (a)(2)(B)(i), respectively.

Id. ¶ 5; see also ECF No. 2-2 (NTA). An immigration judge ("IJ") ordered Petitioner removed on May 15, 2008. ECF No. 2 at 2, ¶ 6; ECF No. 8 at 30. As a result, Petitioner lost his Lawful Permanent Resident status. ECF No. 2 at 2, ¶ 2.

Immigration officials subsequently released Petitioner on an Order of Supervision ("OSUP"). ECF No. 2 at 2, ¶ 7; ECF No. 2-4 (various OSUP orders). Petitioner has worked as a police vehicle upfitter/installer since 2009, ECF No. 2 at 8, ¶ 37, and has appeared for all hearings related to his immigration proceedings, ECF No. 9 at 3. On December 23, 2025, Immigration and Customs Enforcement ("ICE") agents arrested Petitioner at a routine OSUP check-in. ECF No. 2 at 2, ¶ 8; ECF No. 9 at 3. He has been detained at the California City Detention City, within this judicial district, ever since. ECF No. 2 at 2, ¶ 9.

In the interim, Petitioner, through counsel, filed a motion to reopen his removal proceedings based on his claims to asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). ECF No. 2 at 3, ¶ 10. An IJ denied Petitioner's motion to reopen on February 18, 2026. ECF No. 2 at 3, ¶ 12; ECF No. 2-6 (IJ order). On March 18, 2026, Petitioner appealed the denial to the Board of Immigration Appeals ("BIA"). ECF No. 2 at 3, ¶ 13; ECF No. 2-7 (filing receipt).

On March 13, 2026, Petitioner filed a motion to vacate his 2007 criminal conviction in Los Angeles County Superior Court. ECF No. 2 at 3, ¶ 14. On June 12, 2026, the Superior Court granted the motion pursuant to Cal. Penal Code § 1473.7 for failure to provide proper immigration advisements at the time Petitioner entered his plea. The Superior Court also dismissed the charge in the interest of justice, under Cal. Penal Code § 1385. ECF No. 2 at 3-4, ¶ 15; ECF No. 2-9 (order). On July 7, 2026, Petitioner filed a motion to remand proceedings with the BIA on the basis that the vacatur of his conviction represents new evidence warranting the reopening of removal proceedings and termination of his removal order. ECF No. 8 at 14-44.

## II. Procedural History

Petitioner, through counsel, filed the instant § 2241 petition on July 10, 2026, raising three causes of action. First, Petitioner alleges his detention violates 8 U.S.C. § 1226(a) because (1) neither § 1226(c) or § 1231(a) apply to him due to the vacatur of his 2007 conviction, and (2) he

was entitled to a § 1226(a) bond hearing at six months of detention under Rodriguez v. Robbins, 804 F.3d 1060, 1089 (9th Cir. 2015) ("Rodriguez III"). ECF No. 2 at 9, ¶¶ 42-44. Second, Petitioner argues that the denial of a § 1226(a) bond hearing violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). Id. at 10, ¶¶ 45-46. Third, Petitioner alleges that his detention without a bond hearing violates his procedural due process rights. Id. at 10-11, ¶¶ 47-50. By way of relief, Petitioner seeks his release or a bond hearing before an IJ within 14 days. Id. at 11.

Respondents oppose the petition on grounds that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6) and that his pending applications for relief preclude a finding that there is no significant likelihood of removal in the reasonably foreseeable future. ECF No. 8 at 2-3. Respondents also submitted Petitioner's motion to remand proceedings to EOIR filed with the BIA on July 7, 2026. Id. at 14-44. Petitioner filed a reply arguing that none of the conditions for § 1231(a)(6) detention are present and that his removal is not reasonably foreseeable due to his pending BIA appeal of the denial of his motion to reopen and pending motion to remand before the BIA. ECF No. 9.

## DISCUSSION

### I. Applicable Detention Statute

"Where a [noncitizen] falls within [the] statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Petitioner argues that he is entitled to a bond hearing under 8 U.S.C. § 1226(a), whereas Respondents argue that he is subject to post-removal-period detention under § 1231(a)(6).

Petitioner's arguments for § 1226(a) detention are unavailing. Section 1226(a) authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). Here, it undisputed that Petitioner remains subject to a final order of removal. The final order of removal shifted his detention to § 1231(a) and triggered the start of the 90-day removal period, which has long since lapsed.

While Petitioner is plainly subject to § 1231(a) by virtue of his final order of removal,

Respondents' arguments for § 1231(a)(6) specifically are inconsistent with the statute. By virtue of Petitioner's release on OSUP more than 15 years ago, the undersigned instead finds that Petitioner's detention is governed by § 1231(a)(3):

> Respondents acknowledge that the initial 90-day removal period has passed but assert that Petitioner's present detention is valid under 8 U.S.C. § 1231(a)(6). Respondents are mistaken. That provision permits continued detention for certain individuals who are already detained "beyond the removal period[.]" 8 U.S.C. § 1231(a)(6). It does not provide a legal basis to re-detain an individual who has already been released after it was determined that removal was not foreseeable. The decision to revoke Petitioner's release and detain him is thus governed by 8 U.S.C. § 1231(a)(3).

Garcia Bonilla v. Warden, No. 1:26-CV-02765-DJC-AC, 2026 WL 1113880, at *1 (E.D. Cal. Apr. 24, 2026); see also Singh v. Becerra, No. 1:26-CV-00513-DJC-CSK, 2026 WL 569262, at *2 (E.D. Cal. Mar. 1, 2026) (same). Under § 1231(a)(3), when a noncitizen "does not leave or is not removed within the removal period," the noncitizen, pending removal, "shall be subject to supervision under regulations prescribed by the Attorney General."

Nevertheless, Petitioner asks the Court to treat him as detained under § 1226(a) because the 2007 criminal conviction underlying his final order of removal has been vacated. But several weeks ago, Petitioner asked the BIA to remand his pending appeal to the Executive Officer for Immigration Review ("EOIR") (which the undersigned takes to mean the Immigration Court, since BIA is also a part of EOIR) to determine whether that same vacatur warrants reopening of removal proceedings and termination of the removal order. In essence, Petitioner is asking the Court to preempt administrative review of his removability and treat his order of removal as invalid for purposes of determining the statutory detention authority.

The Court has no jurisdiction to do so. See 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal[.]"). Petitioner offers no authorities to the contrary. He cites Matter of Pickering, 23 I. & N. Dec 621 (BIA 2003), where the BIA "acknowledge[d] that a conviction vacated because of a 'procedural or substantive defect' is not considered a 'conviction' for immigration purposes and cannot serve as the basis for removeability." Cardoso-Tlaseca v. Gonzales, 460 F.3d 1102, 1107 (9th Cir. 2006) (citing Pickering, 23 I. & N. Dec. at 624). But

even assuming Petitioner is correct that the vacatur of his conviction eliminates its immigration consequences, he cannot use a § 2241 petition to circumvent BIA and Court of Appeal review of that question. See Cardoso-Tlaseca, 460 F.3d at 1107 (holding the issue of whether vacatur of petitioner's conviction under Cal. Health & Safety Code § 11358 warrants reopening removal proceedings "must be determined in the first instance by the BIA on remand"). Accordingly, because Petitioner remains in post-removal-period detention, he is not entitled to relief on his § 1226(a) or related APA claim.[1]

### II. Due Process Analysis

The petition also raises a procedural due process claim challenging "[t]he government's detention of Petitioner without a *bona fide* bond redetermination hearing." ECF No. 2 at 11, ¶ 50. This claim is undeveloped and appears rooted in Petitioner's belief, rejected above, that he is subject to § 1226(a). Nevertheless, the undersigned will analyze whether Petitioner, as a §1231(a) detainee, is entitled to a bond hearing as a matter of procedural due process.

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration

---

[1] The undersigned further notes that the Supreme Court in Jennings v. Rodriguez, 583 U.S. 281, 306 (2018), rejected the Rodriguez III entitlement Petitioner invokes here: "The Court of Appeals ordered the Government to provide procedural protections that go well beyond the initial bond hearing established by existing regulations—namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary. Nothing in § 1226(a)'s text—which says only that the Attorney General 'may release' the alien 'on ... bond'—even remotely supports the imposition of either of those requirements."

detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

Precedent forecloses an inherent due process right to a bond hearing before an IJ after six months of § 1231(a) detention. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 581 (2022). Moreover, the delays stemming from Petitioner's pending appeal and motion to remand do not necessarily entitle him to release under the Zadvydas framework. See Prieto-Romero, 534 F.3d at 1063 ("Although his removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, he is not stuck in a 'removable-but-unremovable limbo,' as the petitioners in Zadvydas were."). But the undersigned does not read these precedents as foreclosing individualized analysis as to whether a bond hearing is necessary to satisfy procedural due process for a noncitizen detained pursuant to § 1231(a).

Turning to the first step of the analysis, Petitioner unquestionably has a protected liberty interest in his continued freedom from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. As to the Mathews factors, Petitioner's private interest is substantial. The petition details how Petitioner has formed the "enduring attachments of normal life," see Morrissey, 408 U.S. at 482, since his initial, post-removal-period release, including building a family and remaining steadily employed since 2009. ECF No. 2 at 8, ¶¶ 34-39.

The second factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. At this step, courts may consider whether "existing agency procedures sufficiently protected [Petitioner's] liberty interest and mitigated the risk of erroneous deprivation." Rodriguez Diaz, 53 F.4th at 1209. As explained below, the undersigned

finds that as a § 1231(a)(3) detainee, Petitioner was entitled to robust procedures that—if meaningfully applied to him—mitigated the risk of erroneous deprivation.

"Where a noncitizen subject to a final order of removal is out of custody, revocation of their release is governed by 8 C.F.R. § 241.13(i)." Bagat v. Andrews, No. 1:26-CV-00346-DJC-AC, 2026 WL 252240, at *1 (E.D. Cal. Jan. 30, 2026) (citing Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025)). There are two regulatory bases for revocation of release. First, any noncitizen who "has been released under an [OSUP] who violates any of the conditions of release may be returned to custody[.]" 8 C.F.R. § 241.13(i)(ii). Second, the government "may revoke a[ noncitizen's] release . . . and return the [noncitizen] to custody if, on account of changed circumstances, [it] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation of release, the government must (1) notify the noncitizen of the reasons for revocation; and (2) conduct an informal interview promptly after revocation "to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Courts have found that these regulations "protect important due process rights owed to non-citizens" and are enforceable in habeas actions. Nguyen v. Charles, No. 1:25-CV-01592-TLN-CSK, 2025 WL 3492117, at *2 (E.D. Cal. Dec. 4, 2025); see also Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) ("As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid.") (quotations and citation omitted).

Here, the petition's procedural due process claim challenges his detention without bond, not the revocation of his release. The petition provides no details on the revocation process at all. In fact, neither party even states *why* the government revoked Petitioner's OSUP. Nor does the current record show whether Petitioner's removal is likely in the reasonably foreseeable future. But the fact Petitioner had the ability to challenge revocation at the onset of his detention under § 241.13(i), and could review that decision via habeas, mitigates any erroneous deprivation of liberty. See Rodriguez Diaz, 53 F.4th at 1210 (finding second Mathews factor favored the

government where the "the agency's decision to detain [petitioner under § 1226(a)] was subject to numerous levels of review" and challengeable in habeas). Accordingly, the second factor favors the government.

The third and final factor favors Petitioner, as the administrative and fiscal burden of providing a custody redetermination hearing are "minimal." Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). However, on balance, the undersigned finds that the second Mathews factor weighs heavily against Petitioner and tilts the analysis toward Respondents. Accordingly, the undersigned recommends that the petition be denied. The denial should be without prejudice to renewal should Petitioner wish to file a habeas challenge to the revocation of his OSUP pursuant to the regulatory framework described in detail above.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that Petitioner's petition for writ of habeas corpus (ECF No. 2) be DENIED without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 16, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE